***NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RICKY KURT WASSENAAR, | : | |
| | : | Civil Action No. 13-1485 (PGS) |
| Plaintiff, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| GARY LANIGAN, et al., | : | |
| | : | |
| Defendants. | : | |

**SHERIDAN, District Judge:**

Presently before the Court is a motion to dismiss by Defendants Gary Lanigan, Kenneth Nelsen, Michelle Ricci, Michael Scantlin, Charles E. Warren, Jr., and Dr. Ralph Woodward (collectively, "Moving Defendants") *Pro Se* Plaintiff Ricky Curt Wassenaar's ("Plaintiff's") prisoner civil rights complaint.  In addition, Plaintiff has moved for reconsideration of this Court's prior decision denying his motion for default judgment and, further, seeks appointment of counsel in light of service issues that he is experiencing.  The Court held oral argument on both motions, and now issues its decision.  For the following reasons, the Court grants in part and denies in part the Moving Defendants' motion to dismiss.  The Court denies Plaintiff's motion for reconsideration, but grants Plaintiff the opportunity to file an *in forma pauperis* application in order to seek the appointment of counsel.

**I.    BACKGROUND**

Plaintiff asserts several claims in his verified complaint: an omnibus claim challenging the conditions of confinement at New Jersey State Prison and the prison's strip search practices, among other constitutional violations (Count One); a claim asserting that he was not properly

1

credited money placed on his account by his sister, and that mailroom staff interfered with his mail (Count Two); a denial of medical treatment claim relating to his ear (Count Three); a "tort" claim, asserting that his property was damaged by prison staff as a retaliatory measure (Count Four); and a claim that the prison's 10% commissary charge violates the Interstate Corrections Compact, N.J.S.A. 30:7C-1 (Count Five). Plaintiff brings these claims against a number of defendants, who consist of supervisory staff and correctional officers at New Jersey State Prison, along with several doctors. The general tenor of his complaint is that he is being singled out for harsh treatment because he is imprisoned for having kidnapped and assaulted correctional officers in Arizona in 2011.

Plaintiff's Complaint was initially filed in state court on or about June 7, 2012. The case was subsequently removed to this Court on March 12, 2013. On March 24, 2014, the Court denied a motion for default judgment that had been filed by the Plaintiff. The Court, further, directed the U.S. Marshal to serve the complaint on Plaintiff's behalf, and ordered the Defendants to file their responsive pleadings. Summons were issued; however, most of the Defendants remain unserved.[1] Oral argument was held on January 23, 2015, and the motions are now ripe for decision.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Further, Rule 8(a)(2) requires a "showing," rather than a blanket

---

[1] The following defendants have not been served: Goodwin, Scott, Roberts, McDonnell, James, Sorelli, Anthany, Gangslanger, Perkins, Razvi, Gallagher, and Degner.

assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests. Rule 8(a) "contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented" and does not authorize a pleader's "bare averment that he wants relief and is entitled to it". *See*, 5 Wright & Miller § 1202, at 94, 95. "To survive motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In this case, as Plaintiff is appearing *pro se*, his pleadings should be liberally considered. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2004).

### III.   ANALYSIS

#### A.   Motion to Dismiss

The Moving Defendants move to dismiss Counts One, Three, and Five of the complaint. At oral argument, Plaintiff conceded that Count Five is subject to dismissal; accordingly, the motion is granted with respect to this claim and it is dismissed with prejudice. The Court's remaining analysis focuses on Counts One and Three.

*Count One*

In Count One, Plaintiff brings a number of constitutional challenges; specifically, he challenges excessive strip searches conducted by several correctional officers upon him, asserts that he was denied sufficient toiletries for five days, that he was not allowed to shower for six days, and that he was denied sufficient amounts of food—only "30 bites" per day. He further alleges that his cell had rust-colored water, that he suffered sleep deprivation, and that he was subjected

to verbal assaults.[2]  Notably, he asserts that he was placed in administrative segregation upon transfer to the facility, and was placed on suicide watch during some of the times he was subjected to the aforesaid treatment.  Plaintiff contends that this treatment violated his fourth, fifth, eighth, and fourteenth amendment rights.

There are scant facts alleged in the complaint against most of the supervisory defendants.  Defendants Lanigan, Warren, and Nelson are, respectively, the Commissioner, Administrative Warden, and Associate Administrator of the prison.  In the complaint, Plaintiff alleges that he wrote letters to Commissioner Lanigan about his treatment at the facility.  Plaintiff attaches copies of these letters to his opposition brief, but they are not incorporated into the complaint.  He also attaches copies of letters sent to Defendant Nelsen.  In the complaint, Plaintiff alleges that Lanigan "failed to correct the unlawful treatment of me by NJDOC personnel, of which Mr. Lanigan had personal knowledge."  Compl., at ¶ 104.  He makes similar allegations against Defendants Nelson and Warren.  *See id.* at ¶¶ 109, 110.

With respect to Defendant Ricci, a director at the prison, *see id.* at ¶ 105, Plaintiff alleges that, on October 28, 2011, he complained to her "about the starvation diet, the prohibitions on toothbrush, tooth paste, toilet paper, soap, water, confiscation of [his] eyeglasses, that [he] had not been given a shower since October 22, 2011, as well as the body cavity searches occurring nearly daily as punishment authorized by Mr. Goodwin."  *Id.* at ¶ 67.  According to Plaintiff, Ricci then instructed Mr. Goodwin to "vary [Plaintiff's] diet" and to log his meals.  *Id.*

---

[2] Plaintiff summarizes Count One's allegations as follows: "outrageous excessive body cavity searches, starvation diet, food tamperings, confiscation an intentional breaking of [his] eyeglasses, tormentingly verbal assaults, withholding mail recv'd from my family for weeks, meal denials, denial of rec., TV, Radio, reading materials, grooming items, eating utensils, proper hygiene, toilet paper, water, inflicting sleep deprivation & sensory deprivation & overall infliction of psychological torment …."  Compl., at ¶ 100.

4

Plaintiff makes additional allegations against Ricci in his opposition papers, but these allegations are not in his complaint. By way of example, he asserts in his opposition that he sent her a letter on May 3, 2012, documenting a visit she paid to him on April 30, 2012, during which visit he complained to her about threats towards him, tampering with his food, and other continuing issues. *See* Opp. Br. at 19-20. He further notes that Ricci forwarded his letter to a corrections ombudsman for further action on some of the issues – a copy of this letter is attached to the opposition papers as well.

Lastly, Plaintiff alleges that Sergeant Scantling denied him 15 meals because Plaintiff refused to step far enough back from the "food port" in order to receive his tray, and that he refused to give Plaintiff his legal mail for this same reason. *Id.* at ¶ 96. Plaintiff additionally alleges that Scantling refused to allow him to shower for this reason. *Id.*

At oral argument, Plaintiff referenced additional facts also not in his complaint, including details about his interchange with Defendant Ricci regarding his restricted diet and not receiving sufficient food. He further referenced, among other facts, that when he was placed in administrative segregation, he was the only inmate in an area comprising 40 cells. Based on this fact, Plaintiff argued at oral argument that the repeated strip searches to which he was subjected were purely punitive in nature because it was impossible for him to obtain and conceal any contraband. Plaintiff asserted, at oral argument, that he was aware of facts demonstrating that the supervisors at the prison had knowledge of the alleged constitutional deprivations yet failed to take appropriate action.

The thrust of the Moving Defendants' motion to dismiss this Court is that Plaintiff has failed to plead sufficient facts to impose supervisory liability, and that Plaintiff has not sufficiently plead constitutional violations. Defendants' motion to dismiss is rightly premised upon the

5

allegations in the complaint, and not upon the additional allegations that Plaintiff made in his opposition papers and during oral argument. Upon consideration of the additional facts that Plaintiff would incorporate into an amended complaint, and their relation to the concepts of supervisory liability and the nature of the alleged constitutional violations, the Court finds it in the interest of justice to grant Plaintiff leave to amend Count One of his complaint. Accordingly, the Court will deny the Moving Defendants' motion without prejudice at this time.

*Count Three*

In Count Three of his complaint, Plaintiff alleges that he was denied proper medical care for his ear by the medical staff, and that the Medical Director, Dr. Woodward, should be deemed liable. Specifically, Plaintiff asserts that he suffered from an ear infection---that his ear was "draining badly" and Dr. Gallagher refused to physical examine his ear but prescribed him an antibiotic after only viewing his ear while he was placed in a "steelmesh cage." Compl., ¶ 137. Plaintiff filed grievances and complaints in February and March 2012, and his ears were ultimately examined physically by Dr. Ahsan on March 9, 2012, but the antibiotics he prescribed did not resolve the infection, according to Plaintiff. *Id.* at ¶ 143. Plaintiff alleges that he complained to Dr. Woodward in March and April 2012, but that he did not respond. In June 2012, Plaintiff alleges, Dr. Ahsan examined his ear again and stated that it still appeared infected. When Plaintiff filed the complaint in March 2013, he alleged that he was experiencing continued pain and hearing loss. *Id.* at ¶¶ 148-149.

Denial of medical care claims are analyzed under the Eighth Amendment. To succeed on a denial of medical care claim against a supervisor, a plaintiff must allege subjective deliberate indifference. *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 319 (3d Cir. 2014). Moreover, the plaintiff must plead that the medical need is a serious one: "[a] medical need is serious if it is

one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Stones v. McDonald*, 573 F. App'x 236, 237 (3d Cir. 2014) (internal citation and quotation omitted).

At oral argument, the Moving Defendants confirmed that they are not disputing whether Plaintiff's ear infection constituted a serious medical need. Instead, they focus their challenge on whether Plaintiff has pled deliberate indifference. As noted above, Plaintiff alleges that he wrote to Dr. Woodward on March 31, 2012, complaining that Dr. Gallagher refused to examine his ears, but that Dr. Woodward did not respond. However, Plaintiff further alleges that he received follow-up treatment from Dr. Ahsan a few months later in June 2012. Once can infer from Plaintiff's allegations that he was dissatisfied with Dr. Ahsan's treatment because his ear remained infected.

In the denial of medical treatment context, deliberate indifference may be pled by alleging that an official "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatments." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993)); *see also Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013). While the Court appreciates Plaintiff's apparent frustration with his treatment, he has not alleged any facts from which it could be inferred that Dr. Woodward intentionally refused to provide Plaintiff treatment, that he delayed treatment for a non-medical reason, or somehow prevented him from receiving treatment. Nor has Plaintiff pled that Dr. Woodward had any involvement in the decision to prescribe several different types of antibiotics that ultimately proved ineffective, or that the doctor ignored or interfered with treatment for his infection. In any event, "the law is clear that simple medical malpractice is insufficient to present a constitutional violation." *Durmer,* 991 F.2d at 67. *See also Pierce*, 520

F. App'x at 66. Accordingly, Count Three of the complaint is dismissed with prejudice for failure to state a claim for which relief can be granted.

###     B.    Motion for Reconsideration and Request for Counsel

Plaintiff moves for reconsideration of the Court's Order dated March 24, 2014, in which the Court denied Plaintiff's request for default judgment. While Plaintiff has couched this motion as one for reconsideration, the essence of his request is for the appointment of counsel. Therefore, the Court will deny the motion for reconsideration, but consider Plaintiff's request for the appointment of counsel.

Plaintiff requests counsel, at this juncture, in light of the difficulties he is experiencing in serving the defendants because he does not have all the addresses of the unserved defendants. A plaintiff has no constitutional or statutory right to the appointment of counsel in a civil case. *See Parham v. Johnson*, 126 F.3d 454, 456–57 (3d Cir. 1997); *Tabron v. Grace*, 6 F.3d 147, 153–54 (3d Cir. 1993). Nevertheless, under certain circumstances, the court may, in its discretion, appoint an attorney to represent an indigent civil litigant. *See* 28 U.S.C.A. § 1915(e) (1).

In evaluating a motion to appoint counsel, as a threshold matter, the court must first determine if Plaintiff's claims have "some arguable merit in fact and law." *See Monroe v. Phelps*, 520 F. App'x 67, 71 (3d Cir. 2013) (citing *Tabron*, 6 F.3d at 155). If the court is satisfied that the claims are "factually and legally meritorious," then the following factors, referred to in the case law as the *Tabron* factors, must be examined: (1) a plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of a plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether a plaintiff can attain and afford counsel on his or her own behalf. *See id.* (citing *Tabron*, 6 F.3d at 155–57).

Here, although Plaintiff has requested counsel in light of service difficulties, the Court will consider the appointment in the context of all of the *Tabron* factors. The Court has denied without prejudice the motion to dismiss Count One of Plaintiff's Complaint, and Counts Two and Four of the complaint have not been challenged, thus, remaining in the suit at this time. Plaintiff has experienced difficulty in serving several of the defendants, and he raises a number of conditions of confinement-related claims that will require extensive factual discovery. A number of the issues will turn on credibility determinations, although expert testimony will not likely be required.

On the question of whether Plaintiff can afford counsel, presumable because this matter was removed from state court and Defendants paid the removal fee, Plaintiff has not filed an application for *in forma pauperis* status with the Court. Accordingly, while the Court is inclined to grant his request for counsel, Plaintiff must first submit an application for *in forma pauperis* status under 28 U.S.C. 1915 before the Court can finalize its decision. In this regard, Plaintiff may file an application within thirty (30) days of the date of the Order accompanying this Opinion.

## IV.   CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Moving Defendants' motion to dismiss. The Court denies the motion without prejudice with respect to Count One; Plaintiff is granted leave to amend his complaint within sixty (60) days of the date of the Order accompanying this Opinion. As for Counts Three and Five, the Court grants the motion to dismiss on these counts. Regarding Plaintiff's motion for reconsideration, the Court denies that motion but grants Plaintiff the opportunity to file an *in forma pauperis* application within fifteen (15) days of the date of the Order accompanying this Opinion.

April 15, 2015                                                                     *s/Peter G. Sheridan*
                                                                                                   PETER G. SHERIDAN, U.S.D.J.