**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICKY KURT WASSENAAR, | |
| Plaintiff, | Civil Action No. 13-1485 (MAS) (DEA) |
| v. | OPINION |
| GARY LANIGAN, et al., | |
| Defendants. | |

**SHIPP, District Judge**

Pro se Plaintiff Ricky Kurt Wassenaar ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Presently before the Court is a Motion to Dismiss the Amended Complaint ("Motion") by Defendants Gary Lanigan, Ken Nelsen, Michelle Ricci, Charles Warren, Sgt. Scantlin, and Dr. Ralph Woodward ("Movants"). (ECF No. 45.) Plaintiff opposes the Motion. (ECF No. 50.) For the reasons stated below, the Motion is granted.

**I.    FACTUAL BACKGROUND**

For the purpose of this Opinion, the Court accepts all facts alleged in the Amended Complaint as true and views the facts in the light most favorable to Plaintiff. Plaintiff is a prisoner currently confined at a state prison in New Mexico. (*See* Am. Compl. 1, ECF No. 44.) The incidents alleged in the Amended Complaint occurred during Plaintiff's approximately eight month detention at two New Jersey prisons—a forty-four (44) day incarceration at the Garden State Youth Correctional Facility ("GSYCF"), from October 3, 2011, to November 15, 2011, (*id.*

at 2; Addendum 4, ECF No. 44-1), and subsequent incarceration at the New Jersey State Prison in Trenton, New Jersey, through June 20, 2012 (*see* Addendum 4, 10).[1]

Plaintiff originally filed this suit in New Jersey state court. Movants removed the case to the District Court on March 12, 2013, and the case was assigned to the Honorable Peter G. Sheridan, U.S.D.J. ("Judge Sheridan"). (*See* ECF No. 1.) Movants subsequently filed their first motion to dismiss, seeking to dismiss Counts One, Three, and Five of the Complaint. (*See* Mot., May 27, 2014, ECF No. 23.) Judge Sheridan summarized the original Complaint as containing the following five claims for relief:

> an omnibus claim challenging the conditions of confinement at New Jersey State Prison and the prison's strip search practices, among other constitutional violations (Count One); a claim asserting that he was not properly credited money placed on his account by his sister, and that mailroom staff interfered with his mail (Count Two); a denial of medical treatment claim relating to his ear (Count Three); a 'tort' claim, asserting that his property was damaged by prison staff as a retaliatory measure (Count Four); and a claim that the prison's 10% commissary charge violates the Interstate Corrections Compact, N.J.S.A. 30:7C-1 (Count Five).

(Op. 1-2, Apr. 15, 2015 ("Prior Op."), ECF No. 32.)

Judge Sheridan granted the motion in part and denied it in part, dismissing Counts Three and Five with prejudice, but denied the motion on Count One and granted Plaintiff leave to amend his claims under Count One. (*See* Order, Apr. 15, 2015, ECF No. 33.) Judge Sheridan explained that Plaintiff conceded Count Five was subject to dismissal, (*id.* at 3), and that Count Three was dismissed because Plaintiff had failed to state a claim upon which relief may be granted, (*id.* at 8). As to Count One, Judge Sheridan found that Plaintiff made additional factual allegations in his opposition brief, material to the case, that were not contained in the Complaint. (*Id.* at 6.) Judge

---

[1] The parties do not explain the circumstances behind Plaintiff's incarceration in New Jersey.

Sheridan opined that in the interest of justice, it would be proper to grant Plaintiff leave to amend the Complaint to incorporate the additional factual allegations into an amended complaint before deciding whether Count One would be subject to dismissal. (*Id.*) The case was then reassigned to the Undersigned on August 20, 2015, (*see* Text Order, Aug. 20, 2015, ECF No. 43), and on August 26, 2015, Plaintiff filed his Amended Complaint (*see* ECF No. 44). Movants filed the instant motion on September 15, 2015, seeking to dismiss Count One. (*See* ECF No. 45.)

Since Movants only move to dismiss Count One, (*see* Movant's Br. 3, ECF No. 45-2), the Court limits its analysis to the allegations in the Amended Complaint that involve Movants with respect to Count One.[2] Although the Amended Complaint contains very detailed factual allegations regarding the alleged constitutional violations under Count One, only a fraction of the allegations are directed at Movants. As Plaintiff acknowledges that Defendants Lanigan, Warren, Nelson, and Ricci are supervisory officials, (*see* Am. Compl. 1-2), much of Plaintiff's allegations regarding these defendants are related to their failure to respond to Plaintiff's grievances, (*see* Pl.'s Opp'n Br. 3-7). Plaintiff additionally makes a few direct allegations against Defendant Lanigan, asserting that he ordered Plaintiff to solitary confinement at GSYCF, where he remained for forty-four days, and issued special handling instructions that applied only to Plaintiff.[3] (*See* Addendum 7.) Concerning the non-supervisory defendants, Plaintiff makes no allegations at all that Dr.

---

[2] Prior to the issuance of this Opinion and accompanying Order, the Court dismissed all claims against Defendants Benard Goodwin, Lt. Scott, Lt. Roberts, Sgt. McDonnell, Sgt. James, C/O Sorelli, C/O Anthany, C/O Gangslanger, Sgt. Perkins, Dr. Razvi, Dr. Carol Gallagher, and Sgt. Degner for Plaintiff's failure to effectuate service upon them. (*See* Order, Feb. 9, 2016, ECF No. 60.) As such, any claims against those defendants have already been dismissed.

[3] Plaintiff also makes allegations regarding how the special handling instructions resulted in Plaintiff not receiving timely medical treatment for his ear infection. (*See* Addendum 7.) However, as Judge Sheridan has already dismissed, with prejudice, Plaintiff's denial of medical services claim concerning an ear infection, (Prior Op. 7-8), the Court will not address any such claims in the Amended Complaint.

3

Woodward caused or contributed to the alleged constitutional violations relating to Plaintiff's conditions of confinement or strip searches. In addition, the only allegations against Sgt. Scantlin are that from "May 29, 2012 through June 14, 2012, Sgt. Perkins and Sgt. Michael Scantlin combined to deny me fifteen (15) meals, which includes all three (3) meals on June 1, 2012 and three (3) consecutive meals over June 5th and 6th, 2012." (Addendum 6.)

## II.  STANDARD OF REVIEW

Every complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . .

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016). For a complaint to survive dismissal, it must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). On a motion to dismiss for failure to state a claim brought pursuant to Federal Rule of Civil Procedure 12(b)(6),

4

a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

In determining the sufficiency of a *pro se* complaint, the Court must be mindful to accept its factual allegations as true, *see James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012), and to construe it liberally in favor of the plaintiff. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992).

## III. DISCUSSION

A plaintiff can pursue a cause of action under § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Thus, to state a claim for relief under § 1983, a plaintiff must establish, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013).

### A. Count One

#### 1. Supervisory Claims against Defendants Lanigan, Warren, Nelson, and Ricci

Movants argue that Plaintiff's constitutional claims in Count One against Defendants Lanigan, Warren, Nelson, and Ricci should be dismissed for failure to state a claim upon which relief may be granted because respondeat superior claims are not actionable under § 1983. The

Court agrees. In a § 1983 claim, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* While affirmative action by a supervisory official is not required to state a § 1983 claim, Plaintiff must still show that "a supervisor . . . had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes v. First Corr. Med. Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015); *see Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."). "[A]llegations [that] . . . merely assert their involvement in the post-incident grievance process" are insufficient to establish liability. *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005). "Merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim." *Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015).

There is case law, however, suggesting that repeated written complaints to a supervisory defendant of an *ongoing* constitutional violation may be sufficient to establish deliberate indifference by circumstantial evidence. *See, e.g., Cardona v. Warden – MDC Facility*, No. 12-7161, 2013 WL 6446999, at *5 (D.N.J. Dec. 6, 2013) (holding that plaintiff stated a valid denial of medical services claim against the prison warden because plaintiff alleged an ongoing constitutional violation, and alleged that the warden was made aware of the ongoing violation through repeated written requests); *Carter v. Smith*, No. 08-279, 2009 WL 3088428, at *6 (E.D. Pa. Sept. 23, 2009) ("Where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is confronted with a

6

situation he can remedy directly.") (quoting *Harnett v. Barr*, 538 F. Supp. 2d 511, 524-25 (N.D.N.Y. 2008)). However, these cases require the plaintiff to establish an ongoing violation that can be remedied by the supervisory official. The receipt of, or response to, grievances about past violations will not do because the supervisor's actions, or lack thereof, would not have caused the plaintiff additional injury. *See Robinson v. Ricci*, No. 08-2023, 2012 WL 1067909, at *10 (D.N.J. Mar. 29, 2012) (finding no personal involvement when a supervisory official was made aware of a constitutional violation after it had already occurred); *Carter*, 2009 WL 3088428, at *6 (distinguishing allegations of ongoing violations from those that already occurred).

Plaintiff fails to establish supervisory liability through allegations of personal knowledge and acquiescence. As the case law above provides, at a minimum, Plaintiff must demonstrate that (1) he made repeated attempts to notify the supervisory defendant, (2) of a sufficiently long, ongoing violation, (3) that could have been remedied by the supervisor. Here, Plaintiff alleges, in a conclusory fashion, that his grievances involved ongoing violations that each of the supervisory defendants knew and ignored. (*See* Addendum 13.) However, the exhibits Plaintiff attached to the Amended Complaint, which are copies of his grievances to the supervisory defendants, contradict Plaintiff's allegations. For example, with regard to Lanigan, Plaintiff wrote six grievance letters addressed to Lanigan on January 5, January 24, February 1, February 2, February 23, and March 19, 2012. (*See* Ex. A, ECF No. 44-2.) Each of these letters, however, addressed substantially different issues, and thus were not repeat notices of the same issues. More importantly, these grievances all occurred within the time span of less than three months. Therefore, it is insufficient to infer from these letters that Lanigan had personal knowledge of and acquiesced in the alleged constitutional violations—a supervisor can hardly be held liable for acquiescence if he did not even have a reasonable opportunity to remedy the alleged violation. *See*

*Stevenson v. Cty. Sheriff's Office of Monmouth*, No. 13-5953 (MAS), 2015 WL 512423, at *13 (D.N.J. Feb. 6, 2015) (rejecting a plaintiff's supervisory claims because "[t]here are no allegations of an ongoing violation for a long period of time sufficient to show personal involvement and impose liability under § 1983"). Similar deficiencies exist with regard to Plaintiff's grievances directed to Defendants Ricci, Warren, and Nelson. (*See* Ex. B, ECF No. 44-3 (letters to Ricci dated April 10, May 3, and May 22, 2012); Ex. C, ECF No. 44-4 (letters to Warren dated March 5, March 7, April 19, May 17, May 23, June 1, June 7, and June 18, 2012); Ex. D, ECF No. 44-5 & 44-6 (letters to Nelson dated March 7, March 27, April 2, April 10, April 17, April 27, May 22, May 23, and May 25, 2012).)[4]

While these letters certainly demonstrate that Plaintiff frequently filed grievances, they do not support what Plaintiff conclusively alleges—that the supervisory defendants had personal knowledge of *and* acquiesced in an ongoing constitutional violation. Accordingly, all supervisory claims under Count One against Defendants Lanigan, Warren, Nelson, and Ricci are dismissed with prejudice.[5]

---

[4] The Amended Complaint does allege that Plaintiff made a verbal grievance directly to Defendant Ricci on October 28, 2011. (Am. Compl. 10.) However, there is no factual allegation to show that Ricci ignored that complaint—in fact, Ricci directed another prison official to remedy at least some of the issues raised. (*Id.*) Nor is there any allegation that Plaintiff informed Ricci that the alleged violations complained of continued—there was no mention of these same issues in Plaintiff's subsequent letters to Ricci.

[5] The Court does not afford Plaintiff an opportunity to amend these claims because amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-13 (3d Cir. 2002) (holding that futility of amendment is a proper reason to deny leave to amend). No amendment by Plaintiff can cure the deficiencies shown through the grievance letters that Plaintiff attached to the Amended Complaint, and Plaintiff is no longer incarcerated in New Jersey.

2. <u>Direct Claims Against Defendant Lanigan</u>

Next, Plaintiff alleges that Defendant Lanigan directly violated his constitutional rights by ordering him to be placed in solitary confinement during his forty-four day incarceration at GSYCF and by subjecting him to special handling instructions that were not enforced upon other inmates, such as requiring him to be escorted by guards when outside of his cell. (Addendum 7.) Plaintiff asserts that these specific orders violated his constitutional rights because no other inmates were subjected to the same restrictions. (*Id.*)

The Eighth Amendment to the United States Constitution prohibits a State from inflicting "cruel and unusual punishment" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981). The Supreme Court has construed the Eighth Amendment as prohibiting "conditions" that involve the unnecessary and wanton infliction of pain or are disproportionate to the severity of the crime warranting imprisonment. *Id.* at 347. The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." *Id.* at 346 (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). To state a claim under the Eighth Amendment, an inmate must satisfy both objective and subjective elements. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The objective element questions whether the deprivation of a basic human need is sufficiently serious; the subjective component asks whether the officials acted with a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The objective component is contextual and responsive to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *See Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted));

*Rhodes*, 452 U.S. at 345. What is required to establish the unnecessary and wanton infliction of pain varies according to the nature of the alleged constitutional violation. *Hudson*, 503 U.S. at 5.

However, "[t]he difficulties of operating a detention center must not be underestimated by the courts." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 132 S. Ct. 1510, 1515 (2012). "[T]he importance of deference to correctional officials [whose actions] imping[ed] on an inmate's constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.'" *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of retained constitutional rights of . . . convicted prisoners[.]" *Id.* at 1517 (quoting *Bell v. Wolfish*, 441 U.S. 520, 546 (1979)). The task of determining what is reasonably related to legitimate security interests is within the province and professional expertise of correctional officers. *Id.* "[I]n the absence of substantial evidence . . . to indicate that the officials have exaggerated their response to these considerations courts should ordinarily defer to their expert judgment in such matters." *Id.* (quoting *Block v. Rutherford*, 468 U.S. 576, 584-85 (1984)). Administrative confinement, without more, does not deprive inmates of a constitutionally cognizable liberty interest. *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997).

Here, Plaintiff's sole argument in support of his assertion that Lanigan's alleged orders violated Plaintiff's constitutional rights, is that no other prisoner was subjected to the same conditions as him. However, Plaintiff does not allege that he was just any other prisoner. Plaintiff alleges in the Amended Complaint that he "was a high-profile prisoner, convicted of taking over a guntower, and holding guards hostage." (Am. Compl. 1.) Plaintiff also alleges that "[t]he event rec[eived] extensive national media coverage, and it remains the Longest Prison Hostage Standoff in United States History." (*Id.*) These allegations are further corroborated by Plaintiff's

subsequent criminal convictions, where he was "sentenced to 16 consecutive life sentences for . . . assault by a prisoner, kidnapping and sexual assault. He also was sentenced to terms of 15.75, 12 and 10 years' imprisonment for promoting prison contraband, first-degree escape and aggravated assault, respectively." *See State v. Wassenaar*, 161 P.3d 608, 612-13 (Ariz. Ct. App. 2007).[6]

So, in fact, Plaintiff was uniquely situated as a prisoner convicted of crimes that directly threatened the safety of prison officials and demonstrated a substantial risk of an escape attempt. Under these circumstances, to overcome the deference this Court must afford to Lanigan's orders, it is not enough for Plaintiff to simply rely on the allegation that he was not treated like any other prisoner. Rather, Plaintiff must allege how Lanigan's orders were exaggerated responses to legitimate security interests. *See Thorne v. Chairperson Fla. Parole Comm'n*, 427 F. App'x 765, 771 (11th Cir. 2011) (dismissing plaintiff's claim that he was treated differently than other prisoners because he failed to establish that other prisoners were similar to him in all relevant respects); *Faruq v. McCollum*, No. 11-5987, 2013 WL 3283942, at *5 (D.N.J. June 25, 2013) (granting defendants' motion to dismiss plaintiff's claim that he was treated differently than other inmates, holding that "with regard to security level and placement decisions that are based on individual factors and histories, it is hard to imagine that any inmate would be considered similarly situated"). To give credence to Plaintiff's argument that his constitutional rights were violated simply because he was treated differently than other prisoners would be asking the Court to ignore

---

[6] The Court takes judicial notice of the convictions, which, together with Plaintiff's factual allegations in the Amended Complaint, facially establish an inference that Plaintiff was an inmate with a prior history of attempted escape and extreme violence. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Bolick v. Pennsylvania*, 473 F. App'x 136, 138 (3d Cir. 2012) ("[A] court is permitted to look to matters of public record, including 'criminal case dispositions.'") (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993)).

important allegations in the Amended Complaint that Plaintiff himself chose to include. *See Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1219 (10th Cir. 2011) (finding that *Twombly* and *Iqbal* require a plaintiff to "allege, as it must, the identity or characteristics of other, similarly situated [individuals] and how those similarly situated [individuals] were treated differently" in order to state a valid equal protection claim) (quoting *Glover v. Mabrey*, 384 F. App'x 763, 778 (10th Cir. 2010)).

Based on Plaintiff's own allegations, it is reasonable to infer that Plaintiff was a dangerous individual. To require that Plaintiff be escorted while he was not in his cell was not an exaggerated response to the risks that Plaintiff posed. "[D]ecisions regarding security classifications 'may legitimately be informed by a variety of an individual's characteristics' that would warrant different treatment for inmates based on valid penological concerns." *Faruq*, 2013 WL 3283942, at *5 (quoting *Rowe v. Cuyler*, 534 F. Supp. 297, 301 (E.D. Pa. 1982)). Additionally, subjecting Plaintiff to forty-four days in solitary confinement, while Plaintiff was temporarily housed at GSYCF, was not an unnecessary and wanton infliction of pain—courts have held longer administrative segregations, for prisoners far less dangerous, as constitutional. *See, e.g., Gibson v. Lynch*, 652 F.2d 348, 351-53 (3d Cir. 1981) (90-day segregation, for a prisoner who was temporarily housed at a prison, with no reason other than that the prisoner was in a different classification as other prisoners at the facility, was constitutional); *Williams v. Armstrong*, 566 F. App'x 106, 109 (3d Cir. 2014) (112-day segregation, for an inmate who made inappropriate comments to a female correctional officer, was constitutional). Accordingly, the Court finds that Plaintiff has failed to state a claim for which relief may be granted with respect to his allegations that Lanigan directly violated his constitutional rights and all such claims against Lanigan under Count One are dismissed.

       3.     <u>Claims against Defendant Dr. Woodward</u>

Movants assert that "Count One is not aimed at Dr. Woodward." (Mot. Br. 6-7, ECF No. 45-2.) As previously discussed, this is consistent with the Court's finding that Plaintiff did not allege in the Amended Complaint that Dr. Woodward caused or contributed to the alleged constitutional violations under Count One. Indeed, as a medical doctor, it is unclear how Dr. Woodward would have had the authority and/or control over Plaintiff's conditions of confinement, nor has Plaintiff alleged any such authority. *See Zelinski v. Pa. State Police*, 108 F. App'x 700, 703 (3d Cir. 2004) ("A finding of liability under 42 U.S.C. § 1983 requires that the defendant . . . have exercised *power possessed by virtue of state law* and made possible only because the *wrongdoer* is clothed with the authority of state law.") (quoting *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 23 (3d Cir. 1997)) (emphasis added); *Bonenberger*, 132 F.3d at 24 ("[A] state employee . . . whose interaction with the victim is unconnected with his execution of official duties does not act under color of law."). As such, any claims under Count One against Dr. Woodward would fail Rule 8's pleading standard and are dismissed.

       4.     <u>Claims against Defendant Sgt. Scantlin</u>

Movants argue that the allegations in the Amended Complaint are insufficient to state a valid claim against Sgt. Scantlin. The Court agrees.

Plaintiff alleges that due, in part, to Sgt. Scantlin's actions, he was deprived of fifteen meals in a span of seventeen days. Plaintiff further alleges that on two non-consecutive days, he was deprived of all meals. Plaintiff admits, however, that Sgt. Scantlin refused to provide the missing meals to Plaintiff because Plaintiff did not comply with feeding procedures. (Addendum 6.) Movants cite to *Adderly v. Ferrier*, 419 F. App'x 135, 140 (3d Cir. 2011), for the proposition that even the withholding of nineteen meals in a span of a week did not constitute cruel and unusual

punishment, and therefore, Plaintiff's allegations cannot possibly state a valid claim. The Court in *Adderly* was deciding a summary judgment motion, with the benefit of a full record showing that the *Adderly* plaintiff refused some meals, received some meals, and was denied other meals because he did not follow feeding procedures, essentially disproving his allegation that he was deprived nineteen out of a possible twenty-one meals. *Id.* In the instant matter, at the motion to dismiss stage, the Court *must* accept as true *all* factual allegations in the Amended Complaint. *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012). The *Adderly* decision, however, does provide some useful instruction to this Court, namely that (1) the deprivation of meals must be sufficiently serious—a prison official does not automatically incur liability simply because he did not provide *all* meals to a prisoner, and (2) when a prisoner was denied meals for his failure to follow feeding procedures, it counsels against a finding that the prison official had the culpable state of mind under the Eighth Amendment to impose liability.

Here, Plaintiff alleges that he was denied all meals only on two non-consecutive days, four days apart. That means for the other fifteen days, Plaintiff had received at least one meal, and since there were only nine other missing meals in those fifteen days, Plaintiff received two meals for at least six of those days. Plaintiff further admits that he was deprived of the missing meals because he refused to comply with feeding procedures. Given these allegations, the Court cannot draw a reasonable inference that the alleged deprivation was sufficiently serious under the Eighth Amendment, or that Sgt. Scantlin wantonly inflicted unnecessary pain upon Plaintiff. *See Iqbal*, 556 U.S. at 678. Had Plaintiff followed the feeding procedure, which merely required Plaintiff to step back from the cell door while Sgt. Scantlin delivered the meals, (Addendum 6), Plaintiff likely would have received those missing meals. Plaintiff's reason for non-compliance, simply that no other prisoner was required to step back during meal delivery, (*id.*), is insufficient to establish a

culpable state of mind; as the Court stated above, Plaintiff was not just any other prisoner. Accordingly, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted against Dr. Woodward and Sgt. Scantlin under Count One, and dismisses those claims.

### B.   Counts Two and Four

Lastly, the Court addresses the remaining claims in the Amended Complaint, namely Counts Two (regarding money from Plaintiff's sister and interference with his mail by the mailroom staff) and Four (destruction of Plaintiff's property as a retaliatory measure), as asserted against Movants. Movants assert that Counts Two and Four are not directed at any of them. (Mot. Br. 6 n.2.) After a thorough review of the allegations in the Amended Complaint, the Court agrees with Movants as to Count Two. Plaintiff appears to have abandoned his claims under Count Two altogether in the Amended Complaint as it no longer contains any allegations about money from his sister or the mailroom staff.

With respect to Count Four as against Dr. Woodward and Sgt. Scantlin, the Court agrees with Movants that there is no allegation in the Amended Complaint that either were involved in the destruction of Plaintiff's property. Since all claims against Dr. Woodward and Sgt. Scantlin have now been dismissed, the Court dismisses them from the case.

With respect to Count Four as against the supervisory defendants, the Court disagrees with Movants' argument. The Amended Complaint alleges that Plaintiff's personal property was either taken and later found destroyed, or was never returned to him at all. (*See, e.g.*, Am. Compl. 3, 5; Addendum 3.) Plaintiff later alleges that he filed grievances about his property with supervisory officials. (*See* Addendum 7.) Indeed, in the exhibits attached to the Amended Complaint, there are copies of grievances regarding Plaintiff's personal property. (*See, e.g.*, Ex. A at 3; Ex. B at 6;

Ex. C at 2; Ex. D at 6.) As such, the Court concludes that the allegations in Count Four are directed at the supervisory defendants.

In making the above findings, the Court stresses that it is not making a determination as to the sufficiency or the merits of these allegations, but simply noting that Movants are incorrect when asserting that Count Four is not directed against the supervisory defendants. Because Movants do not expressly move to dismiss those claims, they remain intact, so the supervisory defendants are not dismissed from this case.

### C.  Motion to Remand and for Sanctions

Additionally, Plaintiff filed a motion to remand and for sanctions. (ECF No. 49.) Plaintiff's sole argument for remand is that removal was untimely, in violation of the requirements under 28 U.S.C. § 1446. *See* 28 U.S.C. § 1446(b)(1) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading[.]"). According to Plaintiff, Movants were served on February 5, 2013, (Mot. 2, Oct. 13, 2015, ECF No. 49), while the notice of removal was filed on March 12, 2013. (*See* ECF No. 1.) However, "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal[.]" 28 U.S.C. § 1447(c). When Plaintiff filed his motion to remand on October 13, 2015, thirty-one months had passed since Movants filed the notice of removal, making Plaintiff's request for remand untimely. As such, the motion to remand and for sanctions is denied.[7]

---

[7] Plaintiff's argument for sanctions is simply that Movants lied about when they were actually served. Since the Court is denying Plaintiff's challenge to removal, the Court finds that any imposition of sanctions is unwarranted.

16

## IV. CONCLUSION

For the reasons set forth above, the Motion is granted. Plaintiff's claims against Defendants Gary Lanigan, Ken Nelsen, Michelle Ricci, Charles Warren, Sgt. Scantlin, and Dr. Ralph Woodward under Count One are dismissed. More specifically, Plaintiff's supervisory claims against Defendants Lanigan, Nelsen, Ricci, and Warren under Count One are dismissed with prejudice, and all other claims under Count One against Movants are dismissed without prejudice. Additionally, Defendants Sgt. Scantlin and Dr. Ralph Woodward are dismissed from the case. Plaintiff's motion to remand and for sanctions is denied.

_s/ Michael A. Shipp_
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: April 29, 2016